**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

GREYDEN BOUCHER,
on behalf of Plaintiff and the
class members described herein,

Plaintiff,

v.

CAPITAL COMMUNITY BANK, d/b/a CC FLOW,

Defendant.

**COMPLAINT – CLASS ACTION**

1. Plaintiff, Greyden Boucher, seeks redress from the Defendant, Capital Community Bank d/b/a CC Flow for a scheme to make high-interest loans to Plaintiff and others without required disclosures of its triple-digit cost.

2. Plaintiff alleges violation of:

   a. The Truth in Lending Act, 15 U.S.C. §1637 ("TILA");

   b. The disclosure requirements of the Indiana Uniform Consumer Credit Code;

   c. The Indiana Deceptive Consumer Sales Act.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction under 15 U.S.C. §1640 (TILA), 28 U.S.C. §1331 (general federal question), 28 U.S.C. §1337 (interstate commerce), and 28 U.S.C. §1367 (supplemental jurisdiction).

4. Personal jurisdiction is proper because Defendant sought to and did make loans to Indiana residents.

5. Venue is proper because the events complained of impacted Plaintiff here.

6. Article III is satisfied because Defendant obligated Plaintiff and the class members on high-interest loans without disclosing the annual percentage rate to them.

## PARTIES

7. Plaintiff Greyden Boucher is a natural person residing in Indianapolis, Indiana.

8. Plaintiff is a "consumer" as defined in the Truth in Lending Act, 15 U.S.C. §1602, in that the credit at issue was obtained for personal, family or household purposes and not for business purposes.

9. Defendant Capital Community Bank d/b/a CC Flow is a bank with a principal business address of 1909 W. State Street, Pleasant Grove, UT 84062. It was formerly located at 3280 N. University Avenue, Provo, UT 84604.

## FACTS

10. Plaintiff obtained an open-end line of credit from Capital Community Bank d/b/a CC Flow. The original line of credit documents are in Appendix A.

11. Plaintiff obtained the loan in response to Internet advertising.

12. Plaintiff signed the loan agreement electronically, while in Indiana.

13. The funds were transferred electronically to Plaintiff's bank account in Indiana.

14. Repayment was to be made by ACH debit of Plaintiff's bank account in Indiana.

15. Plaintiff was in Indiana at all times.

16. Capital Community Bank d/b/a CC Flow issues more than 26 such open-end lines of credit each year. Capital Community Bank d/b/a CC Flow is therefore a "creditor" as defined in 15 U.S.C. §1602.

17. The effective annual percentage rate on the Account was over 100%.

18. Capital Community Bank d/b/a CC Flow furnished periodic statements through 2026. (Appendix B)

19. In its initial disclosures and on monthly statements, Capital Community Bank d/b/a CC Flow does not express its fees in terms of annual percentage rates (APRs). Rather, it states there is a monthly or bi-weekly "Statement Balance Fee."

20. The "Statement Balance Fee" varies according to the outstanding balance. It is

therefore a "finance charge" that must be expressed as an annual percentage rate.

21. TILA requires that an annual percentage rate be disclosed in such cases.

22. 15 U.S.C. §1606(b) provides:

> Computation of rate of finance charges for balances within a specified rate. Where a creditor imposes the same finance charge for balances within a specified range, the annual percentage rate shall be computed on the median balance within the range, except that if the Bureau determines that a rate so computed would not be meaningful, or would be materially misleading, the annual percentage rate shall be computed on such other basis as the Bureau may by regulation require.

23. For example, Capital Community Bank d/b/a CC Flow charges some borrowers a monthly fee of $125 on balances between $600 and $624.99. Section 1606(b) requires that the APR be computed on the median, of $612.50. Finance charges of $1,500/year (12 x $125) on a $612.50 balance is an APR of about 245%.

24. Defendant sought out Indiana residents for such loans.

25. Each extension or continuation of credit under Defendant's line of credit constitutes a new contract.

26. The lines of credit are marketed and obtained for personal, family or household use and not for business purposes.

27. The line of credit agreement refers to an arbitration clause that specifies AAA.

28. Plaintiff initiated an AAA arbitration. The AAA refused to hear the matter because Defendant refused to comply with its procedures. (Appendix C) This ends Plaintiff's obligations to arbitrate, *Bernal v. Kohl's Corp.*, 174 F.4th 573 (7th Cir. 2026).

**COUNT I – TRUTH IN LENDING ACT**

29. Plaintiff incorporates paragraphs 1-28.

30. The Capital Community Bank d/b/a CC Flow account is an open end credit account as defined in 15 U.S.C. §1602(j), which provides:

> The terms "open end credit plan" and "open end consumer credit plan" mean a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan or open end consumer

> credit plan which is an open end credit plan or open end consumer credit plan within the meaning of the preceding sentence is an open end credit plan or open end consumer credit plan even if credit information is verified from time to time.

31. Capital Community Bank d/b/a CC Flow violated 15 U.S.C. §1637 by failing to disclose the annual percentage rate in the account opening disclosures and on the monthly statements.

32. This failure is intentional and part of a pattern of such violations.

**CLASS ALLEGATIONS**

33. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

34. The class consists of (a) all individuals (b) with Indiana addresses (according to Defendant's records) (c) who obtained a line of credit purporting to be issued by Capital Community Bank (d) where either the original account opening documents or monthly statements (e) failed to disclose an annual percentage rate (f) and either the original account opening documents or the monthly statements were furnished within one year prior to the filing of this action.

35. Plaintiff may alter the class definition to conform to developments in the case and discovery.

36. On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

37. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether Defendant fails to disclose an annual percentage rate;

b. Whether such nondisclosure violates TILA.

38. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

39. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained

counsel experienced in class actions and consumer credit litigation.

40. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights;

c. Congress intended class actions to be the principal enforcement mechanism under the TILA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

i. Statutory damages;

ii. Attorney's fees, litigation expenses and costs of suit;

iii. Such other and further relief as the Court deems proper.

## COUNT II -- DISCLOSURE PROVISIONS OF INDIANA CONSUMER CREDIT CODE

41. Plaintiff incorporates paragraphs 1-28.

42. Defendant's line of credit agreement is governed by Indiana law, and the parties cannot agree otherwise. The Indiana Uniform Consumer Credit Code ("Indiana UCCC"), Ind. Code §24-4.5-1-201, "Territorial application," provides:

> (1) Except as otherwise provided in this section, this article applies to sales, leases, and loans made in this state and to modifications, including refinancings, consolidations, and deferrals, made in this state, of sales, leases, and loans, wherever made. For purposes of this article, the following apply: . . .
>
> > (c) A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender or a person acting on behalf of the lender in this state.
> >
> > (d) Except as provided in subdivisions (e) and (f), a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means.

(e) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction secured by an interest in land located outside Indiana.

(f) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction at a creditor's place of business in another state.

For purposes of subdivisions (a) through (c), an offer is received by a creditor or a person acting on behalf of the creditor in Indiana if the offer is physically delivered, or otherwise transmitted or communicated, to a person who has actual or apparent authority to act for the creditor or the person acting on behalf of the creditor in Indiana, regardless of whether approval, acceptance, or ratification by any other agent or representative of the creditor or the person acting on behalf of the creditor in another state is necessary to give legal consequence to the consumer credit transaction. . . .

(5) Notwithstanding other provisions of this section:

(a) except as provided in subsection (2), this article does not apply if the buyer, lessee, or debtor is not a resident of this state at the time of a credit transaction and the parties then agree that the law of the buyer's, lessee's, or debtor's residence applies; and

(b) this article applies if the buyer, lessee, or debtor is a resident of this state at the time of a credit transaction and the parties then agree that the law of this state applies.

(6) Except as provided in subsection (5), the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or modifications thereof, to which this article applies:

(a) An agreement that the law of another state shall apply.

(b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.

(c) An agreement that fixes venue. . . .

43. The Capital Community Bank d/b/a CC Flow account is a "Revolving loan account" as defined in Ind. Code §24-4.5-3-108, which provides:

"Revolving loan account" means an arrangement between a lender and a debtor pursuant to which:

(1) the lender may permit the debtor to obtain loans from time to time;

(2) the unpaid balances of principal and the loan finance and other appropriate charges are debited to an account;

(3) a loan finance charge if made is not precomputed but is computed on the

outstanding unpaid balances of the debtor's account from time to time; and

(4) the debtor has the privilege of paying the balances in installments.

44. Defendant violated Ind. Code § 24-4.5-3-301 by failing to disclose the annual percentage rate on the account opening documents and monthly statements on the Capital Community Bank d/b/a CC Flow account.

45. Ind. Code § 24-4.5-3-301 requires the same disclosures as TILA.

46. Defendant failed to make required disclosures.

47. This failure is intentional and part of a pattern of such violations.

48. Ind. Code §24-4.5-5-203, "Civil liability for violation of disclosure provisions," states:

> (1) Except as otherwise provided in this section, a creditor who, in violation of the provisions on disclosure (Part 3) in IC 24-4.5-2 and IC 24-4.5-3, fails to disclose information to a person entitled to the information under this article is liable to that person in an amount equal to the sum of:
>
> (a) the following:
>
> (1) in the case of an individual action, twice the amount of the credit service or loan finance charge in connection with the transaction, but the liability pursuant to this subdivision shall be not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000); . . .
>
> (2) in the case of a class action, an amount the court allows, except that as to each member of the class no minimum recovery is applicable, and the total recovery under this subdivision in any class action or series of class actions arising out of the same failure to comply by the same creditor may not be more than the lesser of:
>
> (i) five hundred thousand dollars ($500,000); or
>
> (ii) one percent (1%) of the net worth of the creditor; and
>
> (b) in the case of a successful action to enforce the liability under paragraph (a), the costs of the action together with reasonable attorney's fees as determined by the court. In determining the amount of the award in a class action, the court shall consider, among other relevant factors, the amount of any award granted under the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.), the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional. . . .

> (7) No action pursuant to this section may be brought more than one (1) year after the date of the occurrence of the violations. . . .

## CLASS ALLEGATIONS

49. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

50. The class consists of (a) all individuals (b) with Indiana addresses (according to Defendant's records) (c) who obtained a line of credit purporting to be issued by Capital Community Bank (d) where either the original account opening documents or monthly statements (e) failed to disclose an annual percentage rate (f) and either the original account opening documents or the monthly statements were furnished within one year prior to the filing of this action.

51. Plaintiff may alter the class definition to conform to developments in the case and discovery.

52. On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

53. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether Defendant fails to disclose an annual percentage rate;

b. Whether such nondisclosure violates TILA.

c. Whether such nondisclosure violates the disclosure requirements of the Indiana UCCC.

54. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

55. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

56. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights;

c. Congress intended class actions to be the principal enforcement mechanism under the TILA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

i. Statutory damages;

ii. Attorney's fees, litigation expenses and costs of suit;

iii. Such other and further relief as the Court deems proper.

**COUNT III -- INDIANA DECEPTIVE CONSUMER SALES ACT**

57. Plaintiff incorporates paragraphs 1-28.

58. Defendant's lending activity is a financial service and a "service" within the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2(a)(1).

59. Defendant is a "supplier" as defined in Ind. Code § 24-5-0.5-2(a)(3), in that it "regularly engages in or solicits consumer transactions . . . ."

60. Defendant's making loans without disclosure of an annual percentage rate is an "incurable deceptive act" as defined in Ind. Code § 24-5-0.5-2(a)(8), in that it was done "as part of a scheme, artifice, or device with intent to defraud or mislead."

61. Ind. Code § 24-5-0.5-3(a) provides that "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."

62. Ind. Code § 24-5-0.5-4 provides:

(a) A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of:

(1) three (3) times the actual damages of the consumer suffering the loss; or

(2) one thousand dollars ($1,000).

Except as provided in subsection (k), the court may award reasonable attorney's fees to the party that prevails in an action under this subsection. . . .

(b) Any person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member and which has been damaged by such deceptive act, subject to and under the Indiana Rules of Trial Procedure governing class actions, except as herein expressly provided. Except as provided in subsection (k), the court may award reasonable attorney's fees to the party that prevails in a class action under this subsection, provided that such fee shall be determined by the amount of time reasonably expended by the attorney and not by the amount of the judgment, although the contingency of the fee may be considered. . . .

63. Ind. Code §24-5-0.5-5 provides:

(a) No action may be brought under this chapter, except under section 4(c) [IC 24-5-0.5-4(c)] of this chapter, unless (1) the deceptive act is incurable or (2) the consumer bringing the action shall have given notice in writing to the supplier within the sooner of (i) six (6) months after the initial discovery of the deceptive act, (ii) one (1) year following such consumer transaction, or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction, which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom, and unless such deceptive act shall have become an uncured deceptive act.

(b) No action may be brought under this chapter except as expressly authorized in section 4(a), 4(b), or 4(c) [IC 24-5-0.5-4(a), IC 24-5-0.5-4(b), or IC 24-5-0.5-4(c)] of this chapter. Any action brought under section 4(a) or 4(b) of this chapter may not be brought more than two (2) years after the occurrence of the deceptive act. An action brought under section 4(c) of this chapter may not be brought more than five (5) years after the occurrence of the deceptive act.

64. Notice was given to Defendant on March 11, 2026, prior to the commencement of the AAA arbitration.

## CLASS ALLEGATIONS

65. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

66. The class consists of (a) all individuals (b) with Indiana addresses (according to Defendant's records) (c) who obtained a line of credit purporting to be issued by Capital Community Bank (d) where either the original account opening documents or monthly statements (e) failed to disclose an annual percentage rate (f) and either the original account opening documents

or the monthly statements were furnished within two years prior to the filing of this action.

67. Plaintiff may alter the class definition to conform to developments in the case and discovery.

68. On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

69. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether Defendant fails to disclose an annual percentage rate;

b. Whether such nondisclosure violates the Indiana Deceptive Consumer Sales Act.

70. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

71. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

72. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

WHEREFORE, Plaintiff requests the following relief:

i. Statutory damages;

ii. Attorney's fees, litigation expenses and costs;

iii. Such other or further relief as is appropriate.

*<u>/s/ Daniel A. Edelman</u>*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Madeline Brashear
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Dedelman@edcombs.com
jclark@edcombs.com
mbrashear@edcombs.com

**NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

T:\42449\Pleading\Complaint - court, revised_Pleading.wpd